**UNITED STATES of America**

v.

**John UPTON.**

**Crim. No. 80–00028–01–D.**

United States District Court,
D. New Hampshire.

Nov. 24, 1980.

Robert J. Lynn, Asst. U. S. Atty., Concord, N. H., for plaintiff.

Richard B. McNamara, Manchester, N. H., for defendant.

## MEMORANDUM OPINION

DEVINE, Chief Judge.

This matter came before the Court for hearing on the morning of November 19, 1980, on the defendant's motion to dismiss (and/or to suppress certain evidence), and at the conclusion of said hearing the Court orally denied the motion and stated that the

trial herein would proceed as scheduled on December 1, 1980. The Court added that its written opinion stating the reasons for its denial of said motion would follow as soon as reasonably possible, and the instant Opinion is in compliance with such statement.

Defendant John Upton has been indicted for alleged violations of 18 U.S.C. §§ 371, 1001, and 2, the thrust of the indictment being that he received Comprehensive Employment and Training Act (CETA) funds to which he was not entitled by representing that he did certain maintenance work for the Heritage Christian Children's Home (HCCH), a non–profit group care home for children whose needs cannot adequately be met through family living. For the purposes of the instant motion, it was agreed that Reverend James Pearson, the executive director of HCCH, cooperated with agents of the Government (agents of the United States Department of Labor) and agreed to converse with the defendant while equipped with recording devices to record their conversations. Subsequent to this agreement, three telephone conversations and two face–to–face meetings between Pearson and Upton were recorded, and the Government expects to introduce the recordings of these conversations at the trial of the defendant. The telephone conversations were apparently recorded using a standard type of tape recorder attached to the telephone on Pearson's end of the line, while the face–to–face meetings were recorded by a concealed transmitter on Pearson's person which in turn transmitted his conversations to a receiver/recorder maintained by surveillance agents in the vicinity of the meeting.

It is the thrust of the defendant's argument that pursuant to Title III of the Omnibus Crime Control Act, 18 U.S.C. §§ 2510–2520, Wire Interception, Congress has delegated to the states the authority to adopt more but not less restrictive legislation dealing with the subject of wiretapping and eavesdropping. Defendant urges that New Hampshire has followed this delegation in enacting N.H. RSA 570–A, Wiretapping And Eavesdropping, a pertinent section of which, N.H. RSA 570–A:2(I), requires the "consent of all parties" to communications such as were here made to Pearson by the defendant, and that the federal agents are bound by this state statute. Inasmuch as the federal agents (including the United States Attorneys) have allegedly committed felonies, and defendant's counsel could not listen to the tapes without himself committing a felony, and could not therefore determine whether they contained exculpatory evidence, it is argued that the Court must dismiss this action, as its prosecution will "deprive the defendant of his right to effective assistance of counsel and to due process of law". (Pp. 12, 13, Defendant's Memorandum of Law.) Although ingenious, this argument is totally without legal merit.

■ The law is clear that neither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants. *United States v. Caceres*, 440 U.S. 741, 744, 99 S.Ct. 1465, 1467, 59 L.Ed.2d 733 (1979); *United States v. White*, 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); 18 U.S.C. § 2511(2)(c). The rationale for this rule is as follows.

Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his. In terms of what his course will be, what he will or will not do or say, we are unpersuaded that he would distinguish between probable informers on the one hand and probable informers with transmitters on the other. Given the possibility or probability that one of his colleagues is cooperating with the police, it is only speculation to assert that the defendant's utterances will be substantially different or his sense of security any less if he also

thought it possible that the suspected colleague is wired for sound. At least there is no persuasive evidence that the difference in this respect between the electronically equipped and the unequipped agent is substantial enough to require discrete constitutional recognition, particularly under the Fourth Amendment which is ruled by fluid concepts of 'reasonableness'.

*United States v. White, supra,* 401 U.S. at 752, 753, 91 S.Ct. at 1126.

■ Title III of the Omnibus Crime Control Act, 18 U.S.C. §§ 2510–2520 represents a comprehensive attempt by Congress to promote more effective control of crime while protecting the privacy of individual thought and expression, and much of its content was drawn to meet the constitutional requirement for electronic surveillance enunciated by the Supreme Court in *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *United States v. United States District Court,* 407 U.S. 297, 301, 302, 92 S.Ct. 2125, 2128, 2129, 32 L.Ed.2d 752 (1972); *United States v. Donovan,* 429 U.S. 413, 426, 427, 97 S.Ct. 658, 667, 668, 50 L.Ed.2d 652 (1977). While not as clear in some respects as it might be, *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974), its purpose was to effectively prohibit "all interceptions of oral and wire communications, except those specifically provided for in the Act". *Id.* at 514, 94 S.Ct. at 1826.

In its findings as to the necessity for Title III, Congress, *inter alia,* specifically found that

To safeguard the privacy of innocent persons, the interception of wire or oral communications *where none of the parties to the communication has consented to the interception* should be allowed only when authorized by a court of competent jurisdiction and should remain under the con-

trol and supervision of the authorizing court.

Section 801(d), Pub.L.No. 90–351, *cited in Gelbard v. United States,* 408 U.S. 41, 47, 92 S.Ct. 2357, 2360, 33 L.Ed.2d 179 (1972) (emphasis added).

The legislative history of Title III is set forth in S.Rep.No.1097, 90th Cong., 2d Sess., U.S.Code Cong. & Ad.News 1968, pp. 2112, 2177, *et seq.* (hereinafter cited as S.Rep. with appropriate pagination to the U.S. Code Cong. & Ad.News). The statutory promulgation of the above–quoted congressional finding is found in 18 U.S.C. § 2511, which generally provides certain penalties for wrongful interception or attempts to intercept wire or oral communications. 18 U.S.C. § 2511(2)(c) provides

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

■ This exemption of consensual interception of communications was designed, as the legislative history demonstrates (S.Rep. at p. 2182), to reflect existing constitutional law as set forth in *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *Rathbun v. United States,* 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); *On Lee v. United States,* 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952). It is here clearly applicable, as Pearson consented to allow Government agents to "wire" him and to overhear and record the conversations thus transmitted, and the actions of both Pearson and the Government agents were "under color of law".[1]

■ It is true that as the defendant asserts Congress allowed for concurrent state regulation of communication intercepts subject, at the minimum, to the requirements of the Federal regulation. See 18 U.S.C. § 2516(2). Thus Congress made clear that

---

1. It is clear that after initially agreeing to become an informant and to assist the Government agents, Pearson himself was thereafter a Government agent and his actions must be

viewed accordingly. *United States v. Cella,* 568 F.2d 1266, 1282 (9th Cir. 1978) (citing *Hoffa v. United States,* 385 U.S. 293, 295–99, 87 S.Ct. 408, 409–412, 17 L.Ed.2d 374 [1966]).

it did not intend to preempt state legislation with reference to those portions of 18 U.S.C. § 2511 which dealt with the knowledge required to violate (S.Rep. at p. 2181); of 18 U.S.C. § 2512 dealing with the ban on manufacture, distribution, possession, and advertisement of interception devices (S.Rep. at p. 2183); and relative to the recovery of civil damages as set forth in 18 U.S.C. § 2520 (S.Rep. at p. 2196). Congress also provided that although states may pass statutes with standards more stringent than the requirements of federal law, thus excluding from state courts evidence that would be admissible in federal courts, *Commonwealth v. Vitello*, 367 Mass. 224, 327 N.E.2d 819, 833 (1975), a state may not adopt standards that are less restrictive than those set forth in Title III. (S.Rep. at p. 2187.)

As hereinabove indicated, New Hampshire's Legislature in 1969 adopted N.H. RSA 570–A, section 2 of which, so far as here pertinent, prohibits interception of communications "without the consent of all parties to the communication". The New Hampshire statute has been acknowledged by the highest court of that state to be a stricter wiretapping and eavesdropping law than Title III, but the court also acknowledged that the use of a body bug by an undercover police officer in the course of recording a conversation wherein a defendant solicited the informant to commit murder would not be in violation of the federal Constitution. *State v. Ayres*, 118 N.H. 90, 91, 383 A.2d 87, 88 (1978).

■ However, as we are here concerned solely with federal officers engaged in the investigation of an alleged federal crime, with the trial of the offense to be held in a federal court before a federal jury, it is clear that the interception and recordings here are not governed by the provisions of N.H. RSA 570–A or interpretations thereof by the Supreme Court of New Hampshire. Accordingly, the defendant misplaces reliance on such cases as *United States v. Manfredi*, 488 F.2d 588 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974),[2] and its progeny, *United States v. Rizzo*, 491 F.2d 215 (2d Cir.), *cert. denied*, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974) (state warrants procured from a state court pursuant to state law); *United States v. Marion*, 535 F.2d 697 (2d Cir. 1976) (state authorized warrants issued by a state court pursuant to state statute must meet the requirements of that statute before admitted in federal trial). Indeed, in the more recent decisions of *United States v. Sotomayor*, 592 F.2d 1219 (2d Cir.), *cert. denied sub nom. Crespo, et al v. United States*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979), and *United States v. Vazquez*, 605 F.2d 1269 (2d Cir.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), the Second Circuit has made clear that it does not consider *Manfredi* and its progeny to obligate it automatically to apply in a federal proceeding all provisions of the state wiretap statute containing more stringent requirements than those prescribed by Title III.

We believe that at most *Manfredi* requires us, in determining whether to admit a wiretap obtained by a state officer acting under a state court order issued pursuant to a state statute, to apply only those more stringent state statutory requirements or standards that are designed to protect an individual's right of

2. In *Manfredi* state and federal officers conducted a joint investigation of alleged federal narcotics offenses, and in the course thereof, they procured a wiretap warrant authorization from a state judge, who was acting pursuant to a state statute. The Court of Appeals accordingly held that the validity of the warrant was "clearly a question of state law". 488 F.2d at 598. However, the Court also indicated, n. 7 at p. 598:

While we encourage cooperation between federal and state law enforcement agencies, we note that the Government, in allowing a joint investigation to proceed through the use of a state warrant, subjects itself to the risk that state courts may impose on such warrants and the evidence obtained under those warrants a higher standard than would a federal court dealing with interpretation of the federal wiretap statutes. *Cf. California v. Jones*, 30 Cal.App.3d 852, 106 Cal.Rptr. 749, appeal dismissed (1973).

**1198**

privacy, as distinguished from procedural rules that are essentially evidentiary in character.

592 F.2d at 1225.

Nor does plaintiff's reliance on certain language set forth in *United States v. Keen,* 508 F.2d 986, 988 (9th Cir. 1974), *cert. denied,* 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975), add much to the strength of his argument. The Ninth Circuit has explicitly held (citing, *inter alia,* 18 U.S.C. § 2511[2][c]) that "one party's consent is sufficient justification for electronic surveillance and no prior judicial authorization is required". *United States v. Ryan,* 548 F.2d 782, 787 (9th Cir. 1976), *cert. denied,* 430 U.S. 965, 97 S.Ct. 1644, 52 L.Ed.2d 356 (1977); *United States v. Testa,* 548 F.2d 847, 855 (9th Cir. 1977); *see Holmes v. Burr,* 486 F.2d 55 (9th Cir.), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973).

In short, every United States Court of Appeals has agreed that intercepted communications where one party thereto has consented are clearly admissible in federal criminal trials. *United States v. Wright,* 573 F.2d 681 (1st Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978); *United States v. Bonanno,* 487 F.2d 654 (2d Cir. 1973); *United States v. Fuentes,* 563 F.2d 527 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977); *United States v. Santillo,* 507 F.2d 629 (3d Cir.), *cert. denied,* 421 U.S. 968, 95 S.Ct. 1960, 44 L.Ed.2d 457 (1975); *United States v. Armocida,* 515 F.2d 49 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975); *United States v. Shaffer,* 520 F.2d 1369 (3d Cir. 1975), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 640 (1976); *United States v. Cianfrani,* 573 F.2d 835 (3d Cir. 1978); *United States v. Dowdy,* 479 F.2d 213 (4th Cir.), *cert. denied,* 414 U.S. 823, 866, 94 S.Ct. 124, 132, 38 L.Ed.2d 56, 118, *rehearing denied,* 414 U.S. 1117, 94 S.Ct. 851, 38 L.Ed.2d 744 (1973); *United States v. Bragan,* 499 F.2d 1376 (4th Cir. 1974); *United States v. Seidlitz,* 589 F.2d 152 (4th Cir. 1978), *cert. denied,* 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 396 (1979); *Cooper v. United States,* 594 F.2d 12 (4th Cir. 1979); *Ans-*

*ley v. Stynchcombe,* 480 F.2d 437 (5th Cir. 1973); *United States v. Nelligan,* 573 F.2d 251 (5th Cir. 1978); *United States v. Lippman,* 492 F.2d 314 (6th Cir. 1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975); *United States v. Hodge,* 539 F.2d 898 (6th Cir. 1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977); *United States v. Votteller,* 544 F.2d 1355 (6th Cir. 1976); *United States v. Krol,* 374 F.2d 776 (7th Cir.), *cert. denied,* 389 U.S. 835, 88 S.Ct. 46, 19 L.Ed.2d 97 (1967); *United States v. Infelice,* 506 F.2d 1358 (7th Cir. 1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802, *rehearing denied,* 420 U.S. 956, 95 S.Ct. 1342, 43 L.Ed.2d 433 (1975); *United States v. Horton,* 601 F.2d 319 (7th Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); *United States v. Rich,* 518 F.2d 980 (8th Cir. 1975); *United States v. Kirk,* 534 F.2d 1262 (8th Cir. 1976), *cert. denied,* 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977); *United States v. Quinn,* 543 F.2d 640 (8th Cir. 1976); *United States v. Jones,* 545 F.2d 1112 (8th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977); *United States v. Hall,* 543 F.2d 1229 (9th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977); *United States v. Quintana,* 457 F.2d 874 (10th Cir.), *cert. denied,* 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972); *United States v. Hall,* 536 F.2d 313 (10th Cir.), *cert. denied,* 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976); *United States v. Axselle,* 604 F.2d 1330 (10th Cir. 1979); *United States v. Bishton,* 463 F.2d 887 (D.C.Cir.1972).

*Armocida, supra; Shaffer, supra; Nelligan, supra; Hodge, supra; Krol, supra; Infelice, supra; Horton, supra* ; and the Ninth Circuit *Hall* case all dealt with challenges quite similar to those here raised, which were disposed of in short order. The basis therefor is best outlined in the following language from the *en banc* Ninth Circuit decision in *United States v. Hall, supra,* which is found at 543 F.2d 1232:

It may well be true, as the California courts have held, that the federal act does not preclude the states from enacting more restrictive wiretapping statutes of their own. To the extent that there is a conflict between the state and federal legislation, though, the federal statute controls under the Supremacy Clause of the Constitution, Article VI, cl. 2. The state law cannot preempt the federal unless the federal act itself sanctions the application of state standards. That is not the case here. Federal officers are authorized to wiretap under § 2516(1), regardless of the provisions of state law; it is only wiretapping by state officers under § 2516(2) which requires further authorization by state statute. Section 2515 requires the exclusion of wiretap evidence from any court proceeding if its disclosure would violate the federal act; no mention is made of any state law. The legislative intent that federal law is to prevail in case of conflict is further indicated by § 2520, which provides:

> A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter *or under any other law.* (Emphasis added.)

With the lone exception concerning interception by state officers for state prosecutions, the federal statute does not defer to the states.

It is true that in the instant case we deal not with actual "wiretapping" but with consensual monitoring, and therefore the authorities for the intercepts here are governed by 18 U.S.C. § 2511(2)(c) rather than 18 U.S.C. § 2516(1). Additionally, federal courts are not alone in holding that consensual intercepts do not require the application of the requirements of state statute, as New York's highest court has recently held in *People v. McGee*, 49 N.Y.2d 48, 424 N.Y.

S.2d 157, 162–164, 399 N.E.2d 1177, 1182–83 (1979).

In short, the shadow of defendant's superficial complaint that felonious Government agents are depriving him of constitutional rights is dispelled by the sunshine of substantive law, for "when one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. The Fourth Amendment does not protect against unreliable (or law–abiding) associates." *Katz v. United States*, 389 U.S. 347, 363, n.\*, 88 S.Ct. 507, 517, n.\*, 19 L.Ed.2d 576 (1967) (White, J., concurring). There is no basis for any claim by defendant that the recordings of his conversations with Pearson deprived him of any of his constitutional rights under the circumstances hereinabove outlined. Read, as they must be, together, 18 U.S.C. § 2511(2)(c) and § 2517(3) [3] specifically authorize the admission into evidence of recordings of this type. *United States v. Armocida, supra,* 515 F.2d at 52.

The modern view as embodied in § 4.1 of Standards Relating to Electronic Surveillance of the American Bar Association provides in pertinent part:

> The surreptitious overhearing or recording of a wire or oral communication with the consent of, or by one of, the parties to the communication should be permitted without the necessity of a court order, provided such communication is not overheard or recorded for the purpose of committing a crime or other unlawful harm.

The commentary to this standard indicates that it is designed to correspond to 18 U.S.C. § 2511(2)(c) and that it is particularly useful for the investigation of certain criminal activities, such as *corruption.* Standards, *op. cit.* 2d ed., Tentative Draft (1978) (emphasis supplied). Inasmuch as defendant is charged with an offense which

---

**3.** 18 U.S.C. § 2517(3) provides:

Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter

may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

**1200**

involves false or fraudulent statements or representations, 18 U.S.C. § 1001,[4] his argument that use of the recording devices somehow involves "prosecutorial over—reaching" (Defendant's Memo at p. 11) is likewise without merit.

■ 18 U.S.C. § 2520 provides in pertinent part that

A good faith reliance on a court order ... shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law.

Unable or unwilling to rely on this portion of the statute, defendant's counsel at the conclusion of the hearing on the motion herein requested and was granted immunity, taking the position that, although a member of the bar of this court and clearly himself acting "under color of law" in preparing his defense, he might be subject to state criminal prosecution. The Court granted his request, and it is clear that the requirement that every sovereign, state or federal, recognize immunity granted by another sovereign, *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *In re Bianchi*, 542 F.2d 98, 101 (1st Cir. 1976), therefore protects counsel from any prosecution resulting from his examination of or use of the recordings here at issue. It follows that his denied request that the Court "order" him to listen to these recordings is without legal merit.

The Court having herein detailed the basis for the oral rulings it made at the hearing on defendant's motion to dismiss, it is anticipated that the case will proceed to trial by jury as currently scheduled on December 1, 1980.

So ordered.

---

4. Both 18 U.S.C. § 1001 and 18 U.S.C. § 371, the statutes which defendant is alleged to have violated, carry penalties of up to five years' imprisonment and $10,000 fines or both. The argument that because the amount of money herein involved is approximately $1,400 the offense is "relatively insignificant" (Defendant's Memo at p. 8) is similarly without merit, as the relatively severe penalties for violation of these statutes indicate that Congress felt that violations thereof were serious in nature.