

# The Attorney General of Texas

April 23, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Oscar H. Mauzy, Chairman
Senate Committee on Jurisprudence
Texas State Senate
State Capitol Building
Austin, Texas    78711

Opinion No. MW-463

Re:  Legality under new state
wiretap   law   of   certain
products now offered for sale
in Texas

Dear Senator Mauzy:

The Sixty-seventh Legislature enacted House Bill No. 360, commonly known as the "wiretap bill." Acts 1981, 67th Leg., ch. 275, at 729. This bill amended section 16.02 of the Penal Code and enacted article 18.20 of the Code of Criminal Procedure. You have asked several questions concerning the relationship between this bill and its federal counterpart, 18 U.S.C. sections 2510 et seq., the "Omnibus Crime Control and Safe Streets Act of 1968" (hereinafter Omnibus Crime Control Act). You have also forwarded copies of advertisements for particular electronic devices currently for sale in Texas and asked whether these devices are "primarily designed or used for the nonconsensual interception of wire or oral communications." See Code Crim. Proc. art. 18.20, §1(4).

Your questions can be more readily addressed if certain differences between the state and federal laws are kept in mind. Article 18.20, section 1(4) of the Texas Code of Criminal Procedure defines an "electronic, mechanical, or other device" as:

> a device or apparatus primarily designed or used for the nonconsensual interception of wire or oral communications.

This term is defined in the federal law, 18 U.S.C. section 2510(5), as:

> Any device or apparatus which can be used to intercept a wire or oral communication other than:
>
> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary

course of its business and being used by the subscriber or user in the ordinary course of its business; or (ii) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal.

You ask whether these definitions are the same, and, if they are not, how they differ.

Section 16.02(d) of the Texas Penal Code provides that:

Except as provided by Subsection (e) of this section, a person commits an offense if he knowingly or intentionally manufactures, assembles, possesses, sells, sends, or carries an electronic, mechanical, or other device that is designed primarily for nonconsensual interception of wire or oral communications. (Emphasis added).

Section 2512(1) of the federal act provides that:

Except as otherwise specifically provided in this chapter, any person who willfully:

(a) sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications;

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce; or

> (c) places in any newspaper, magazine, handbill, or other publication any advertisement of
>
>> (i) any electronic, mechanical, or other device knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications; or
>>
>> (ii) any other electronic, mechanical, or other device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of wire or oral communications,
>
> <u>knowing or having reason to know that such advertisement will be sent through the mail or transported in interstate or foreign commerce,</u>
>
> shall be fined not more than $10,000 or imprisoned not more than five years, or both.   (Emphasis added).

You ask:

> Are the Texas law [section 16.02(d) of the Penal Code] and federal law [section 2512(1) of the federal act] compatible or are they in conflict? If they are compatible and the federal law is more stringent, can the state law be less so?  If they are compatible and the federal law is less stringent, can the state law be more so?  Does the federal or the Texas law take precedence?

You appear to be asking whether section 16.02(d) of the Penal Code and article 18.20, section 1(4) of the Code of Criminal Procedure are preempted by the federal act. We answer in the negative. We also conclude that these state laws raise no question of constitutional privacy, contrary to what your questions appear to assume.

Besides defining "electronic, mechanical, and other device" and regulating various activities pertaining thereto, the 1968 federal Omnibus Crime Control Act regulates the interception of oral and wire communications.  Section 2516 of the federal act lists the federal officers who may seek a judicial order authorizing electronic surveillance, and this section and others specify conditions which must be satisfied before such an order may be granted.  Section 2516

of the federal act also permits certain state officers to apply to state courts for a wiretapping order.  Paragraph (2) provides that:

> The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of [certain specified crimes] designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.  (Emphasis added).

Case law establishes that Congress has "preempted the field" with respect to the regulation of the interception of oral and wire communications.  As to the significance of section 2516(2), courts have declared that:

> Several principles emerge from decisions interpreting 18 U.S.C. §2516(2) providing for state regulation of electronic surveillance. First, the federal act is not self-executing on the states; in order to obtain a wiretap warrant from a state court there must be a state wiretap statute in effect. [Citations omitted]. Second, although a state may adopt a statute with standards more stringent than the requirements of the federal law [citations omitted], ·a state may not adopt a statute with standards more permissive....

State v. Farha, 544 P.2d 341, 347-48 (Kan. 1975).  See State v. Seigel, 285 A.2d 671 (Md. App. 1971); People v. Shapiro, 409 N.E.2d 897 (N.Y. Ct. App. 1980).  In other words, a state must, if it enacts concurrent legislation dealing with the interception of oral and wire communications, enact laws containing standards at least as strict as those set forth in the federal act.

The portions of the state and federal wiretap laws with which you are concerned do not, however, deal with the interception of oral and wire communications. Instead, they define "electronic, mechanical, or other device" and regulate the manufacture, assembly, etc., thereof.

The legislative history of Title III indicates that Congress did not intend that 18 U.S.C. section 2512 preempt state laws enacted to address the same narrow subject matter. See S. Rep. No. 1097, 90th Cong., 2d Sess., U.S. Code Cong. & Admin. News 1968, 2112, 2183, cited in United States v. Upton, 502 F. Supp. 1193, 1196 (D.N.H. 1980).

We conclude that Congress has not preempted the "device" field, as it has the field of electronic surveillance. As regards "devices," therefore, states are free to legislate as they see fit. In other words, they may -- as Texas has -- enact legislation which proscribes at the state level conduct which congress has prohibited at the federal level.

The language of the federal act itself shows that it applies to certain devices which are sent through the mail or transported in interstate or foreign commerce. 18 U.S.C. §2512(1). The Texas laws, on the other hand, apply to all devices designed primarily for nonconsensual interception of wire or oral communications found in Texas, regardless of whether they will be mailed or otherwise placed in interstate commerce. To the extent that the state laws apply to purely intrastate activities, they are unaffected by the federal act. Congress has chosen to regulate activities which have a nexus with interstate commerce, regardless of whether it could constitutionally have done otherwise. See United States v. Burroughs, 564 F.2d 1111 (4th Cir. 1977).

Moreover, even to the extent that the Texas statutes regulate activities which have a nexus with interstate commerce, viz., the manufacture, assembly, etc., of devices which will be sent through the mails or transported in interstate or foreign commerce, they are not preempted by the federal act. The federal provisions regulating "devices" contain no statute analogous to section 2516(2) which seeks to define the parameters within which states may legislate, and there is no other evidence to indicate that Congress preempted this particular field. Challenged state action will not be regarded as "preempted" where it does not stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67 (1941). Federal regulation of a field of commerce will not be deemed preemptive of state regulatory power absent "persuasive reasons -- either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142 (1963).

In short, insofar as they define "electronic, mechanical, or other device" and regulate the manufacture, assembly, etc., thereof, we conclude that the Texas wiretap statutes to which you refer are not preempted by the federal act and may stand alongside that act. Offenses occurring within Texas may, therefore, constitute a violation of state law, federal law, or both. In view of our analysis, we deem it unnecessary to explore the question of whether, and how, the state and federal acts otherwise differ.

With respect to the privacy issue, it is true that requirements in the 1968 Omnibus Crime Control Act which are designed to protect an individual's right of privacy are the minimum standard and must be construed strictly. See, e.g., United States v. Sotomayor, 592 F.2d 1219 (2d Cir. 1979); United States v. Marion, 535 F.2d 697 (2d Cir. 1976). "Privacy" is an issue, however, only in the area of electronic surveillance, i.e., the interception of oral and wire communications. There are no federal privacy standards applicable to devices. Unlike state legislation in the "interception" field, therefore, legislation in the "device" field, i.e., section 16.02(d) of the Penal Code and article 18.20, section 1(4) of the Code of Criminal Procedure, raises no question of constitutional privacy.

As previously noted, you have submitted advertisements for certain listening and recording devices currently sold in Texas. Copies of these advertisements are attached. One such device is attached to a telephone and automatically records both sides of phone conversations. Others are a voice activated control switch and a wireless microphone. You ask whether these devices are prohibited by section 16.02(d) of the Penal Code.

Section 16.02(d) of the Texas Penal Code prohibits, among other things, the manufacture, sale, or sending of a "device that is designed primarily for nonconsensual interception of wire or oral communications." The phrase "designed primarily for nonconsensual interception of wire or oral communications" is derived from language used in the federal statute. 18 U.S.C. §2512. See Attorney General Opinion H-770 (1976). Because the Texas statute is newly enacted, its language has not yet been judicially construed. The language of section 2512 from which that of the Texas statute is derived, however, has been construed by the federal courts to mean that, in order to be prohibited under the "primarily useful"/"primary design" test, the design of the device whose legality is questioned must possess attributes emphasizing the surreptitious character of its use. United States v. Schweihs, 569 F.2d 965, 968 (5th Cir. 1978) (citing S. Rep. No. 1097, 90th Cong., 2d Sess., U.S. Code Cong. & Admin. News, 2183-84, which notes as examples the martini olive transmitter and fountain pen microphone). This construction is consistent with the tenor of section 16.01(b) of the Texas Penal Code, which defines a

"criminal instrument" as anything "specially designed, made or adapted for use in the commission of an offense."

The answer to your question thus depends upon facts relating to the design of the device. Certain facts about these items can be discerned from the advertisements. As previously stated, we have appended copies of these advertisements to this opinion in order to show clearly the facts upon which our answer is based. It is our opinion, based on an examination of the advertisements, that these devices are not prohibited by this Penal Code provision because they do not exhibit design characteristics marking an intent for surreptitious use. A device is not prohibited because it is small or may be adapted to wiretapping or eavesdropping, but only if its design makes the likelihood of covert use apparent, as for example, where the device is disguised to mask its true function.

Thus, we cannot conclude from the advertisements submitted to us that the advertised devices are prohibited by section 16.02(d) of the Penal Code.

### S U M M A R Y

Section 16.02(d) of the Texas Penal Code and article 18.20, section 1(4) of the Texas Code of Criminal Procedure, as enacted and amended by House Bill No. 360, are not preempted by federal statutes, 18 U.S.C. sections 2510(5) and 2512(1), and are compatible with those provisions.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Joe Foy
Rick Gilpin
Patricia Hinojosa
Jim Moellinger

# ATTACHMENT

Advertisements for listening and recording devices (information about manufacturers is deleted).



## NOW! A 12 HOUR TAPE RECORDER the LISTNER T.M. for only $95⁰⁰*

This high quality AC-DC Cassette Recorder provides 6 continuous hours of recording and play back of top quality, true fidelity, distortion free sound on each side of the cassette for a total of 12 hours. Unit has many built-in, special features including • Voice level control • LED Automatic tape stop • Digital counter • indicator, etc. AC Adapter and TDK D-C 180 Cassette included.

### PHONE RECORDING ADAPTER

Record incoming and outgoing calls automatically with this all solid state unit connected to your telephone jack and tape recorder. Starts recording when phone is lifted. Stops when you hang up, making permanent record. Easily installed. No monthly charges. $24.50* FCC APPROVED

### VOX VOICE-ACTIVATED CONTROL SWITCH

Solid state. Self contained. Adjustable sensitivity. Voices or other sounds automatically activate and control recorder. Uses either recorder or remote mike. 2¼ x 1¾ x ¾" $24.95*

Phone Call Adapter $24.50*, VOX $24.95* (* plus $1.50 ea. ship. and hdlg.) Recorder $95.00* (* plus $4.00 ship. and hdlg.) Cal. Res. add tax. Mail order, VISA, M/C, cod's ok. Quantity discounts available. Money back guarantee. Free data. Dealer inquiries invited.

CA



## Telephone Listening Device

Record telephone conversations in your office or home. Connects between any cassette or tape recorder and your telephone or telephone LINE. Starts automatically when phone is answered. Records both sides of phone conversation. Stops recorder when phone is hung up. This device is not an answering service.

size icu

**Each** **$18.95**
Qty Disc Avail

### Super Powerful Wireless Mic

10 times more powerful than other mics. Transmits up to ¼ mile to any FM radio. Easy to assemble kit. 15V battery (not incl.) Call ___ or send $18.95 + $1.00 shipping per item to ___ ___ FL ___ COD's accept. For catalog of transmitters, voice scramblers and other specialty items, enclose $2.00.

size 2"x3"x½"



## TAP & TEL

Starts recorder as soon as phone is lifted, stops recorder when phone is hung up!

• Automatically record both sides of entire telephone conversation!

• Stop snoops from monitoring your phone conversations!

TAP & TEL

• High-quality 7 transistor electronic circuit
• Works with every standard cassette tape recorder (or any recorder with remote control microphone jacks) and all telephones
• Can be instantly attached at any point you choose along telephone line, not just at phone itself.

★ Now you can use your cassette to easily made accurate, permanent records. TAP & TEL Automatically starts and stops your Unattended tape recorder to make Clear recordings of all incoming and outgoing calls.

★ This amazing electronic marvel also assures you that no one is evesdropping in on your Private Conversations! Through solid-state circuitry an LED tells you when someone is on the phone and indicates when an extension or unauthorized listening device ("Bug") is being used.

★ TAP & TEL can remain connected to the telephone line at all times even when not in use; it causes absolutely no noise and does not interfere with phone operation in any way.

**ONLY 39 50** Postpaid

**Warning:** Federal law requires that at least one party to the conversation be aware that it is being recorded. It is illegal to use this device for surveillance purposes!

Okla.
Please send me ___ ___ TAP & TEL'S @ $39.50 ea.
Total Amount Enclosed $____
Name_____
Address_____
City_____ State_____ Zip_____