IN THE MATTER OF ... THE INTERCEPTION OF WIRE ... AND ORAL COMMUNICATIONS ... [GEORGE T. KATTAR]

Misc. No. 85–51–D.

United States District Court,
D. New Hampshire.

March 23, 1988.

Gary C. Crossen, Sp. U.S. Atty., Concord, N.H., Ralph D. Gants, Asst. U.S. Atty., Boston, Mass., for plaintiff.

Joseph F. Gall, Sr., Nashua, N.H., James B. Krasnoo, Boston, Mass., Steven M. Gordon, Concord, N.H., Michael Avery, Boston, Mass., Martin L. Gross, Concord, N.H., E. Susan Garsh, Boston, Mass., for defendant.

## MEMORANDUM OPINION

DEVINE, Chief Judge.

Globe Newspaper Company ("Globe") seeks access to materials currently sealed pursuant to orders of this Court. Such materials were generated in the course of applications for and authorizations of electronic surveillance. The larger part of such surveillance was of the type authorized by the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, codified at Title 18, United States Code sections 2510–2520.[1]

Named as subjects of the electronic surveillance were George T. Kattar and a number of other individuals. The Government, Mr. Kattar, and his sons object to the access requested by Globe.[2] The issues thus presented, deriving from statutory construction and judicial decisions well covered in the memos filed by the respective parties, render unnecessary further hearing. Local Rule 11(g).[3]

Title III of the Omnibus Act "represents a comprehensive attempt by Congress to promote more effective control of crime while protecting the privacy of individual thought and expression." *United States v. Upton*, 502 F.Supp. 1193, 1196 (D.N.H. 1980). The "protection of privacy was an overriding Congressional concern" in the enactment of the statute. *Gelbard v. United States*, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972). And "invasion of privacy is not over when an interception occurs, but is compounded by disclosure in court or elsewhere." *United States v. Vest*, 813 F.2d 477, 481 (1st Cir. 1987).

Title III "is an extremely complex statute." *In re Globe Newspaper Co.*, 729 F.2d 47, 55 (1st Cir.1984). Its structure was designed to meet these expressed concerns. Electronic surveillance may be sought only with respect to certain enumerated criminal offenses. 18 U.S.C. § 2516. Application for its use must be authorized by high-ranking officials of the Department of Justice, *id.*, and the application must contain details of the suspected offenses and reasons as to why other investigative procedures have not been or are not being utilized, 18 U.S.C. § 2518(1)(a)-(f). When issued, authorization is limited to periods of thirty days, 18 U.S.C. § 2518(5), extensions of which may be had only on applications as detailed as the original, 18 U.S.C. § 2518(5). The Court may (and ordinarily does) require progress reports at intervals

---

1. Some of the material sought was developed by applications for and orders authorizing "pen registers", so-called. Such surveillance is not within the purview of Title III. *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). Prior to the 1986 enactment of the pen registers statute (effective in January 1987), 18 U.S.C. §§ 3121–3126, authorization for pen registers was to be found in the provisions of the "All Writs Act", 28 U.S.C. § 1651(a), and Rule 41, Fed.R.Crim.P.

2. Kevin Kattar, George P. Kattar, and James Kattar are the objecting sons of Mr. Kattar. Globe and all Kattars have moved to intervene. Finding that each of them possesses standing to advance its or his respective position, *In re Globe Newspaper Co.*, 729 F.2d 47, 50 n. 2 (1st Cir.1984); *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2443, 65 L.Ed.2d 468 (1980), I find it unnecessary to rule on the motions which seek intervention in criminal proceedings. The First Circuit has not as yet decided this issue with respect to such intervention. *In re Globe Newspaper Co., supra*, 729 F.2d at 50 n. 2.

3. Rule 11(g) of the Rules of the United States District Court for the District of New Hampshire provides that "[m]otions shall be decided by the court without oral argument on the basis of papers filed."

selected by it. 18 U.S.C. § 2518(6).[4]

On expiration of the surveillance order or its extensions, the recordings of interceptions must be sealed by direction of the authorizing judge and preserved for a period of ten years. 18 U.S.C. § 2518(8)(a). Disclosure of the contents of such intercepts is limited to investigative or law enforcement officers in performance of their official duties, including testimony at hearings. 18 U.S.C. § 2517. The disclosure of sealed orders and applications for electronic surveillance is limited to a showing of good cause. 18 U.S.C. § 2518(8)(b). Such orders and applications are also to be maintained for a period of ten years. *Id.*

Moreover, privacy is not the only factor which a court must weigh when faced with a request for access to sealed electronic surveillance materials. The Government has an interest in protection of its methods and sources of criminal investigation. Where, as here, the statute of limitations has not run, the sealed materials might well come into play with respect to future prosecutions. It is well established that the Government is not required to disclose sensitive investigative techniques. *United States v. Cintolo,* 818 F.2d 980, 1002 (1st Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987).

The materials here sought were compiled roughly in the calendar period between July 1985 and April 1986.[5] In the latter month, as a result of interception of information with respect to offenses other than those specified in the authorizations, 18 U.S.C. § 2517(5),[6] a search warrant issued. That warrant was directed to certain premises located in Meredith, New Hampshire, which were known to be occupied by Mr. Kattar.

On execution, the warrant uncovered a large number of firearms. Subsequently, the grand jury in this federal district indicted Mr. Kattar, charging him with a number of federal firearms offenses. Mr. Kattar was subsequently sentenced on his entry of pleas of guilt to a number of counts of that indictment. Although as a defendant he was granted access to the surveillance materials, he did not choose to challenge same by motion to suppress or otherwise.

The Court has refreshed its recollection by reviewing the voluminous materials produced by the electronic surveillance. A fairly large number of individuals whose conversations were intercepted were apparently involved in criminal offenses of the type specified in the applications. A smaller number of individuals were apparently involved in criminal offenses not so specified. A much larger number of interceptees (approximating triple the total number of the aforesaid categories) appeared to have no involvement whatsoever in criminal offenses of any type.

Globe suggests it is entitled to the disclosure of the materials sought because they are "judicial documents" within the meaning of the decision of *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). In that case, at issue was the right of media access to the California statutory proceeding of preliminary hearing, described by the Supreme Court as "often the final and most important step in the criminal proceeding." *Id.,* 106 S.Ct. at 2742–43. In contrast, absent waiver, all prosecutions of felonies in the

---

**4.** With respect to the Title III materials in the instant case, the Court directed that such progress reports be made at ten-day intervals.

**5.** Prior to late October 1985, the surveillance materials were of the pen register type. Title III surveillance commenced in late October 1985, continuing to completion in April 1986.

**6.** 18 U.S.C. § 2517(5) provides:

When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

federal court system must commence by means of indictment returned by the grand jury. U.S. Const., amend. V; Rule 7, Fed. R.Crim.P. Secrecy of proceedings is, of course, a hallmark of a grand jury. Rule 6(e), Fed.R.Crim.P. The reasons for such secrecy are well stated in the following oft-quoted language:

'(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.'

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n. 10, 99 S.Ct. 1667, 1673 n. 10, 60 L.Ed.2d 156 (1979) (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954)).

■ If, of course, a party subject to electronic surveillance seeks suppression of the fruits thereof, the media will then be afforded the opportunity to seek access to the suppression proceedings. *Matter of New York Times Co.*, 828 F.2d 110 (2d Cir.1987). In such circumstances, the court in determining what, if any, portion of the proceedings may be closed "must weigh the competing interests of the parties and the public and structure a remedy that gives the maximum protection to the rights of both." *In re Globe Newspaper Co.*, *supra*, 729 F.2d at 56.

Here, the electronic surveillance materials sought are not properly characterized as "judicial proceedings" of the type at issue in *Press–Enterprise Co. v. Superior Court, supra*. Rejecting the argument of Globe that *Press–Enterprise* derogates from the findings of the Eighth Circuit in *Appeal of Kansas City Star*, 666 F.2d 1168 (8th Cir.1981), I find that the issues before me are to be resolved in accordance with the findings in that decision. There, a newspaper and a broadcast network both sought access to electronic surveillance of a felon had while the subject was in prison. Vacating an order of the trial court granting such access, the appellate court held that the requirement of "good cause" or the unsealing of applications and orders for electronic surveillance provided in 18 U.S.C. § 2518(8)(a) and (b) equated with "a need for disclosure" and required "consideration by the courts of the privacy of other people which might be affected by the disclosure." *Id.* at 1176. As neither a suppression hearing nor a need for disclosure was proven, the court held that the documents should remain under seal. *Id.*

In *National Broadcasting Co. v. United States Dept. of Justice*, 735 F.2d 51 (2d Cir.1984), NBC sought access to electronic surveillance materials to aid in its defense of a libel action. Some of the requested materials had been used by the Government in a prior criminal trial. The Government opposition was grounded on the great number of interceptees, few of whom had been investigated, and the fact that the wiretap applications contained descriptive data regarding confidential informants. Ruling that Title III should not be considered a vehicle for private discovery, the Court said, in relevant part:

Under Title III, with few exceptions not here relevant, no one other than the government can lawfully engage in wiretapping and it therefore is not so unusual that only the government can enjoy its fruits. Beyond that, the government is in a position to make a judgment whether disclosure of the intercepted evidence will or will not be in accordance with the overall public interest, while a private litigant is not.

*Id.* at 54.

Turning to the claim of NBC that, if not entitled to copy the actual recordings, it should have access to the applications and orders relative thereto pursuant to 18 U.S.C. § 2518(8)(b), the Court said:

we believe that Congress also did not intend this section to be used as an avenue for discovery by all private litigants in civil cases, unless they are directly aggrieved by a wiretap. In this regard, the Senate Report on the 1968 enactment of Title III states that 'applications and orders for authorization shall be treated confidentially.... [They] may not be disclosed except incidental to the disclosure or use of the records themselves after showing of good cause, or example, under [subsection] (10)(a)....' S.Rep. No. 1097, *supra*, at 105, 1968 U.S. Code Cong. & Ad. News at 2194. Subsection (10)(a) provides for standing for an 'aggrieved person' to move to suppress 'the contents of any intercepted wire or oral communication ... or evidence derived therefrom ...' NBC cannot claim it is an 'aggrieved person' as defined in section 2510(11) as 'a party to any intercepted wire or oral communication or a person against whom the interception was directed.' *See also United States v. Ferle,* 563 F.Supp. 252 (D.R.I.1983) (denying access to newspaper); *cf. also United States v. Florea,* 541 F.2d 568, 575 (6th Cir.1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977). *Id.* at 55.

 To conclude, this Court has reviewed the information sought by Globe's request. Disclosure of any of the materials would not only interfere with the constitutional privacy rights of interceptees who have not been charged with criminal offenses, but would seriously infringe on the right of the Government to conduct its criminal investigations without early disclosure of its methods of investigation and its sources of information. I further find that the fact that Title III does not include within its purview the applications and orders for pen registers is of little moment, as disclosure of the numbers dialed from the telephones in which the Government was interested would serve to alert possible offenders who made use of such telephone numbers of the interest of law enforcement in their activities. Considering the privacy interests of the interceptees [7] and the interests of law enforcement, and making the finding here that electronic surveillance materials are akin to grand jury proceedings, rather than to "judicial proceedings" of the type held after criminal charges have been filed against an individual, I find and rule that there is neither a constitutional nor a common law basis for granting the request here sought by Globe.[8]

The dilemma posed by premature disclosure of electronic surveillance materials has been well stated by our distinguished colleague, Judge Boyle, when he said:

> Where no indictments have issued against persons allegedly involved in criminal activity, there is a clear suggestion that, whatever their truth, the Government cannot prove these allegations. The court of public opinion is not the place to seek to prove them. If the Government has such proof, it should be submitted to a grand jury, an institution developed to protect all citizens from unfounded charges. All citizens, whatever their real or imagined past history, are entitled to the protection of a grand jury proceeding.

*United States v. Ferle,* 563 F.Supp. 252, 254 (D.R.I.1983).

Globe's request for access to the electronic surveillance materials here compiled either by pen register devices or pursuant of the provisions of Title III of the Omnibus Crime Control Act is herewith denied.

SO ORDERED.

---

7. It is, of course, well established that the constitutional right to privacy, which includes the individual interest in avoiding disclosure of personal matters, must often give way to considerations of public interest. *Daury v. Smith,* 842 F.2d 9, 15 (1st Cir.1988). However, this is not such a case.

8. Upon review of that portion of the surveillance materials concerning the intercept with respect to the firearms offenses, I further find and rule that redaction of same would not be practical because to preserve the identity of others involved than Mr. Kattar would reduce the materials to gibberish.